## WILLIAMS *v.* THE WHISPER.

*(Circuit Court, E. D. Louisiana.   January 19, 1889.)*

COLLISION—BETWEEN STEAMER AND MOORED BARGES—MUTUAL FAULT.

   A steamer neglected to blow its whistle in time to have opened a bridge
   which it was approaching in the night, and about which barges were custom-
   arily moored; and in backing, while the bridge was being opened, collided
   with a barge moored in the channel, 75 to 100 feet below.   The barge carried
   no white light, as required by Rev. St. U. S. § 4233, rule 12.   *Held,* that both
   vessels were in fault,—the steamer in not seasonably blowing its whistle, or
   in approaching the bridge at too great speed, and the barge in not carrying
   the proper light, the evidence not showing that the omission of the light did
   not contribute to the collision,—and that the damages should therefore be
   divided.

In Admiralty.   On appeal from district court.   Libel for damages.

Libel by Charles C. Williams against the steam-boat Whisper, for a
collision between the steam-boat and libelant's barge.   The district court
found the steam-boat alone in fault, and claimant appealed.

*W. S. Benedict,* for appellant.

*C. E. Whittemore,* for appellee.

PARDEE, J.   The libel in this case is brought for a collision in the
Bayou La Fourche, just below the railroad crossing, between the libel-
ant's barge and the steam-boat Whisper.   The Bayou La Fourche is a
navigable stream in Louisiana, and at the place where the alleged collis-
ion occurred varies in width between high and low water from 120 to
250 feet.   The railroad bridge crossing the bayou is a draw-bridge, and
extending from the one side of the draw down the channel for a distance
of 75 to 100 feet, is a piling evidently made to protect the bridge, and
to guide vessels through the draw.   On the side of the said piling the
libelant has been in the habit for several years of mooring more or less
of his barges; and at the time of the collision referred to he had no less
than six barges, loaded and unloaded, lying at this place.   Some were
behind the piling, but the barge which collided with the Whisper, ac-
cording to the evidence, was lying moored to the bank about 75 to 100
feet beyond and below the said piling.   The barge had no lights aboard,
and although it is said that there was a watchman in charge of the barges,
he was not on any particular barge, and there was no light on any of
them, except upon one, which lay above and behind the piling.   The
steamboat Whisper, at about half-past 8 o'clock on the night of the 20th
of March, 1888, coming up the bayou, did not blow its whistle to open
the bridge at the usual distance below, and in time for the bridge-tender
to get the bridge open on its arrival there.   The consequence was that
the steam-boat was compelled to stop and back while the bridge was be-
ing opened.   In backing its stern swung around, and the wheel struck
the top of libelant's barge.

This statement of the case, which is a fair one from the evidence,
shows that both the steam-boat and the barge were in fault for the col-

lision. The steam-boat, because it did not blow the whistle in sufficient time to get the bridge open, or else it came at a too high rate of speed, when it was known that it had to pass a known obstruction like the draw-bridge, particularly when the pilot of the steam-boat knew, or should have known, that barges were lying in and about the channel below the bridge. The barge was in fault because it did not carry one or more good white lights, as provided by law. Rule 12 of section 4233 of the Revised Statutes provides that—

"Coal-boats, trading-boats, produce-boats, canal-boats, oyster-boats, fishing-boats, rafts, or other water-craft, navigating any bay, harbor, or river, by hand-power, horse-power, and sail, or by the current of the river, or which shall be anchored or moored in or near the channel or fair-way of any bay, harbor, or river, shall carry one or more good white lights, which shall be placed in such a manner as shall be prescribed by the board of supervising inspectors of steam-vessels."

It has been contended in this case that it was immaterial whether the barge had the light required by law or not, as the omission thereof did not contribute to the collision. On this point, which I have carefully considered, I am not prepared to say, under the evidence, that the omission of the light on the barge did not contribute to the collision. The master of the Whisper says that he was looking out for a collision with a barge ahead, and did not, while giving orders to the pilot, see the barge actually collided with. In cases like this, when a light required by law has been omitted, it is nearly always impossible to say what the other party would have done if the required warning had been given. An examination of the authorities will show that the adjudged cases are conflicting, but that the best rule is to hold a vessel in fault where it has not complied with the requirements of the law in relation to lights, and a collision has resulted. For a case in point, where I have heretofore examined the question, see *Haimark* v. *Harris*, 29 Fed. Rep. 926. By the collision the steam-boat was damaged in the sum of $37.95. The barge was damaged, as found by the district judge, in the sum of $75. By the admiralty rule, damages in case of collision where both are in fault, must be divided; and a decree to that effect will be entered in this case.